FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 25, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ALEX G.,

                Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

NO:  1:18-CV-03034-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary

judgment.  ECF Nos. 12, 17.  This matter was submitted for consideration without

oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

represented by Special Assistant United States Attorney Daphne Banay.  The

Court, having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is

granted and Defendant's Motion, ECF No. 17, is denied.

**JURISDICTION**

ORDER ~ 1

Plaintiff Alex G.[1] (Plaintiff), filed for supplemental security income (SSI) on March 23, 2010, alleging an onset date of May 4, 1988. Tr. 226-29, 251. Benefits were denied initially, Tr. 89-92, and upon reconsideration, 98-103. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April 8, 2014. Tr. 34-65. On May 14, 2014, the ALJ issued an unfavorable decision, Tr. 18-27, and on November 17, 2017, the Appeals Council denied review. Tr. 1-4. Plaintiff filed a complaint in the U.S. District Court for the Eastern District of Washington and on October 13, 2016, the Honorable Robert J. Whaley issued an order remanding the case for additional proceedings. Tr. 502-29.

After another hearing on July 17, 2017, Tr. 445-72, the ALJ issued a second unfavorable decision on December 21, 2017. Tr. 426-37. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

Plaintiff was born in 1988 and was 29 years old at the time of the second hearing. Tr. 447. He left school after the tenth grade but was working toward a GED. Tr. 449. He has work experience cleaning computer components and in agricultural packing. Tr. 467. He testified he cannot work due to anxiety, depression, and anger. Tr. 453. His anxiety is sometimes so bad he vomits. Tr. 453. When he is depressed, he does not want to do anything or talk to anyone. Tr. 453. When he gets frustrated, he gets angry. Tr. 459. He gets angry pretty much every day. Tr. 459. He takes medication for depression and anxiety, but it does not help. Tr. 454. He tried to go to counseling but when he saw people waiting, he became anxious and left. Tr. 455. When he tries to work, he does not last more than a day or two. Tr. 456.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and

ORDER ~ 3

citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful

activity since March 23, 2010, the application date.  Tr. 428.  At step two, the ALJ

found that Plaintiff has the following severe impairments: cognitive disorder,

attention deficit disorder, depressive disorder, anxiety disorder (post-traumatic stress

disorder/panic disorder), alcohol abuse in sustained remission, and polysubstance

abuse.  Tr. 429.  At step three, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 429.

The ALJ then found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: "He can understand, remember, and carry out simple work instructions and tasks learned through demonstration.  He can have occasional superficial contact with co-workers and the general public.  He can have occasional contact with supervisors.  He needs a routine and predictable work environment."  Tr. 432.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as an electronics worker.  Tr. 436.  Alternatively, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform such as industrial cleaner, kitchen helper, or laundry worker.  Tr. 436-37.  Thus, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since March 23, 2010, the date the application was filed.  Tr. 435.

///

///

///

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1. Whether the ALJ properly found Plaintiff can perform past relevant work or other work;

2. Whether the ALJ properly considered the opinion of a school psychologist;

3. Whether the ALJ properly considered the lay witness statement;

4. Whether the ALJ should have developed the record;

5. Whether the ALJ failed to properly assess the Listing 12.05 at step three; and

6. Whether the ALJ properly considered Plaintiff's symptom claims.

ECF No. 12 at 1.

**DISCUSSION**

**A.     Step Four and Step Five**

Plaintiff contends the ALJ erred at step four and step five of the sequential evaluation by finding he can perform past relevant work or other work. ECF No. 12 at 4-5. At step four, the ALJ considers plaintiff's ability to return to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). The burden of proof lies with the claimant at step four, but the ALJ still has a duty to make the requisite factual

ORDER ~ 9

findings to support his conclusions. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); Social Security Ruling (S.S.R.) 82-62. "If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988); 20 C.F.R. §§ 416.920(g), 416.960(c). The Commissioner may carry the step five burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The vocational expert may testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

The ALJ asked the vocational expert about a hypothetical person of Plaintiff's age, education, and work history with the following limitations: "Assume this individual would be able to understand, remember and carry out simple work instructions and tasks learned through demonstration, would be able to have occasional superficial contact with co-workers and the general public, occasional contact with supervisors, and would need a routine and predictable

work environment." Tr. 467-68. The RFC finding includes limitations identical to those limitations in the hypothetical. Tr. 431. The vocational expert testified that the hypothetical individual could perform Plaintiff's past work as an electronics worker or could perform other work as an industrial cleaner, kitchen helper, or laundry worker II. Tr. 468-69. The ALJ's step four and step five findings regarding past relevant work and other work are consistent with the vocational expert's testimony. Tr. 436-37.

Notwithstanding, Plaintiff contends the vocational expert's testimony regarding occasional contact with a supervisor requires a finding of disability. ECF No. 12 at 4-5. Plaintiff notes that in vocational terms, the limitation of "occasional" means occurring up to one-third of the workday. ECF No. 12 at 4 (citing POMS DI 25001.001). Plaintiff cites the vocational expert's testimony that, "[w]ithin the training period, it is **typical to have up to frequent contact**, maybe up to two-thirds of the day, contact **with a supervisor** to provide that instruction." ECF No. 12 at 4 (citing Tr. 470, emphasis by Plaintiff). If this testimony means that *all* training periods have up to frequent supervisor contact, the RFC limitation to occasional supervisor contact would mean all work would be precluded. However, the vocational expert testified that during training contact could be "maybe up to" frequent. Tr. 470. "Maybe up to" frequent supervisor contact is not

the same as frequent supervisor contact, and thus frequent supervisor contact is not

a requirement of all training periods.

Moreover, Plaintiff omits the context of the vocational expert's statement.

Plaintiff's counsel asked:

> In the second hypothetical assume you have an individual that is limited to simple routine tasks and, even after the training period, the person needs additional instructions that must be repeated and it must be demonstrated to that person. Is that type of extra repetition in instruction available in the unskilled work force?

Tr. 470. Plaintiff's hypothetical includes a limitation which is not part of the RFC:

the person needs additional instructions which must be repeated and demonstrated

both during and after the training period. The vocational expert was asked, "Is that

type of extra repetition in instruction available?" Tr. 470. The vocational expert's

full response is:

> Within the training period, it is typical to have up to frequent contact, maybe up to two-thirds of the day, contact with a supervisor to provide that instruction. Outside of the training period, it is typical for a supervisor to provide occasional contact meaning up to one-third of the day, providing instruction, correction, et cetera. If they are needing additional instruction or correction outside of that occasional, meaning one-third of their day, then you're looking at more of a sheltered workshop.

Tr. 470. Notably, the vocational expert said that during the training period, it is

typical to have frequent contact with a supervisor "to provide *that* instruction." Tr.

470. The logical reference "that instruction" makes is to "additional instructions

that must be repeated" in Plaintiff's hypothetical. Since the ALJ did not include

ORDER ~ 12

"additional instructions that must be repeated" in the RFC, the vocational expert's testimony about possible frequent supervisor contact during the training period is not applicable to the RFC.

Furthermore, the specific jobs identified by the vocational expert as examples of jobs consistent with the RFC, including industrial cleaner (DOT 381.687-018), kitchen helper (DOT 318.687-010), and laundry worker II (DOT 361.685-018), are unskilled jobs for which the Dictionary of Occupational Titles (DOT) indicates that "Taking Instructions-Helping" is not a significant part of the job. *See* Cleaner, Industrial, DICOT 381.687-018 (G.P.O.), 1991 WL 673258; Laundry Worker II, DICOT 361.685-018 (G.P.O.), 1991 WL 672987; and Kitchen Helper, DICOT 318.687-010 (G.P.O.), 1991 WL 672755. There is no basis to conclude that any of these unskilled jobs would require more than occasional interactions with supervisors, even during training. *See Dean v. Berryhill*, No. 1:17-CV-01297-BAM, 2019 WL 1170479, at *5 (E.D. Cal. Mar. 13, 2019) (noting no indication in DOT that training period for unskilled jobs would require more than occasional contact with supervisors) ; *Losoya v. Berryhill*, No. CV 16-8967-PLA, 2017 WL 4564701, at *5 (C.D. Cal. Oct. 11, 2017) (noting that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people"). This is supported by the vocational expert's previous testimony that the RFC including occasional supervisor contact is consistent with multiple jobs, including Plaintiff's past relevant

ORDER ~ 13

work of electronics worker, agricultural produce packer, and machine feeder, as well as other work of industrial cleaner, kitchen helper, and laundry worker.  Tr. 467-69. Based on the foregoing, the Court concludes the ALJ properly considered the vocational expert's testimony.

## B.     School Psychologist Carrie Bishop, M.A. Ed.

Plaintiff contends the ALJ failed to properly consider the findings of Ms. Bishop, a school psychologist who evaluated Plaintiff in November 2009.  ECF No. 12 at 5-8; Tr. 308-16.  After testing, Ms. Bishop found Plaintiff's general cognitive ability is in the extremely low range with a full-scale IQ score of 69.  Tr. 310.  His verbal comprehension and perceptual reasoning, his ability to sustain attention, concentrate, and exert mental control, and his ability to process simple or routine visual material without making errors were all found to be in the borderline range. Tr. 310.  Ms. Bishop made a number of recommendations:  (1) that those closest to Plaintiff provide a positive environment and reinforce positive behaviors; (2) before commencing a task, Plaintiff should be reminded to think about what will be necessary to complete it; (3) more structure should be implemented in Plaintiff's life, such as household responsibilities; (4) he should have a highly organized and structured environment to keep his daily affairs in order, such as appointment books and calendars; (5) in group settings, Plaintiff should sit in the front of the room and use self-talk to stay focused; (6) to complete extensive or complex tasks, Plaintiff

should be trained to break them down into smaller tasks; (7) it may help to keep Plaintiff's tasks brief and varied, and gradually increased in length; (8) Plaintiff was encouraged to study or work in an area with few visual and auditory distractions. Tr. 310-11.

Plaintiff contends the ALJ "ignored" Ms. Bishop's opinion and failed to accommodate her opinion in the RFC. ECF. No. 12 at 6-7. The regulations require that every medical opinion will be evaluated, regardless of the source. 20 C.F.R. § 416.927(c). Contrary to Plaintiff's assertion, the ALJ did not ignore Ms. Bishop's opinion. The ALJ credited the IQ score of 69 obtained by Ms. Bishop and referenced her report throughout the decision. Tr. 430, 432-35. Additionally, the ALJ cited Ms. Bishop's report and found, "I agree that the claimant had moderate restriction in concentration, persistence, or pace, given the findings of tangentiality and distraction." Tr. 435. Therefore, the ALJ did not ignore or implicitly reject Ms. Bishop's report.

Plaintiff contends Ms. Bishop's opinion "is not fully accommodated by the RFC and would compel disability if fully credited." ECF No. 12 at 6. It is not error for the ALJ to omit limitations in a doctor's opinion that are not expressed as functional restrictions. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F3d 685, 691–92 (9th Cir 2009). The *Valentine* court found that notations in the section of the doctor's report entitled "Recommendations" were "neither a diagnosis nor a

statement of . . . functional capacity" because the doctor did not indicate that the claimant was "incapable of working *except* under the recommended conditions." *Id* at 691–92. Here, Ms. Bishop's conclusions are identified as "recommendations" and consist of suggestions or encouraged behaviors, not work restrictions. Tr. 310.

For example, Plaintiff asserts Ms. Bishop "specifically found his tasks needed to be both brief and varied" and that the RFC is incomplete without including such limitations. ECF No. 12 at 7. Ms. Bishop stated, "[i]t may help to keep [Plaintiff's] tasks brief, well within his attention span, and varied. Tasks may be gradually increased in length." Tr. 311. The language "it may help" does not indicate a functional limitation. Ms. Bishop "encouraged" Plaintiff to study or work in an area with few visual or auditory distractions, but this is a recommendation and not a statement that Plaintiff cannot work without such a restriction. Tr. 311. Similarly, Ms. Bishop's suggestion that Plaintiff's "atmosphere [be] as supportive as possible," that Plaintiff be in a "positive environment," and that he should be reminded to think about what will be necessary to complete a task before commencing are not restrictions on Plaintiff's ability to work. Tr. 310-11; *see Galindo v. Comm'r of Soc. Sec. Admin.*, No. 6:14-CV-01221-ST, 2015 WL 7069664, at *5 (D. Or. Nov. 13, 2015) (finding physician's statements that claimant would benefit from a supportive work environment and frequent positive feedback were recommendations and not limitations preventing competitive employment).

1      Furthermore, the RFC is "the most [a claimant] can still do despite his

2 limitations." 20 C.F.R. § 416.945(a)(1). The ALJ acknowledged a moderate

3 restriction in concentration, persistence and pace "given the findings of tangentiality

4 and distraction" in Ms. Bishop's report and elsewhere in the record. Tr. 430. The

5 ALJ is responsible for translating and incorporating clinical findings into a succinct

6 RFC. *See Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008).

7 Accordingly, the RFC includes limitations to simple work instructions and tasks

8 learned through demonstration and a routine and predictable work environment. Tr.

9 432. Notwithstanding the foregoing, since this matter is remanded on other grounds,

10 on remand the ALJ should clarify the weight given to Ms. Bishop's report and

11 explain how her findings were considered.

12 **C.    Lay Witness**

13      Plaintiff contends the ALJ failed to properly consider his mother's testimony.

14 ECF No. 18 at 3-4. Plaintiff's mother testified she observes Plaintiff having panic

15 attacks on a daily basis. Tr. 462-63. She testified that during a panic attack,

16 Plaintiff gets frustrated, paces, and goes through a lot of emotions. Tr. 463. His

17 mother said Plaintiff seems depressed all the time. Tr. 463. He gets "sentimental"

18 and talks about his difficulties getting a job. Tr. 463. She testified that he is not able

19 to stay focused. Tr. 463. For example, he will quit mowing the lawn halfway

20

21

through the task.  Tr. 463.  According to Plaintiff's mother, he cannot do repetitive

tasks for more than an hour.  Tr. 463-64.

An ALJ must consider the testimony of lay witnesses in determining whether

a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053

(9th Cir. 2006).  Lay witness testimony regarding a claimant's symptoms or how an

impairment affects his ability to work is competent evidence and must be considered

by the ALJ.  If lay testimony is rejected, the ALJ "'must give reasons that are

germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996)

(citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).  The ALJ gave little

weight to the testimony of Plaintiff's mother.[2]  Tr. 435.

The ALJ found Plaintiff's mother's descriptions are not entirely supported by

the evidence.  Tr. 435.  Inconsistency with medical evidence is a germane reason for

rejecting lay witness evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.

2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Vincent v. Heckler*, 739

F.2d 1393, 1395 (9th Cir. 1984).  In rejecting Plaintiff's mother's testimony, the ALJ

found: "There is little to no documentation of observed panic attacks in the records.

The claimant also did not provide detailed descriptions of panic attacks during

---

[2] The ALJ erroneously referred to Plaintiff's mother as Ms. Diegos in the decision.
Tr. 435-36.

ORDER ~ 18

appointments. His treatment record also did not describe him as particularly depressed. Rather, his depression was characterized as being in partial remission." Tr. 435-36.

Defendant concedes Plaintiff complained of panic attacks to Dr. Dougherty and that the record contains Plaintiff's complaints of depression. ECF No. 17 at 7 (citing Tr. 338, ECF No. 12 at 11). Thus, Defendant concedes the ALJ erred in rejecting the testimony of Plaintiff's mother for those reasons. ECF No. 17 at 7. However, Defendant argues the error was harmless because the ALJ's other bases for rejecting the testimony were valid. ECF No. 17 at 7-8. If an ALJ cites an erroneous reason for rejecting lay witness testimony, the error may be harmless if the ALJ also gave a valid reason which supports the ALJ's rejection of the witness's testimony. *See Valentine*, 574 F.3d at 694.

Defendant first contends the ALJ properly found there is little to no documentation of observed panic attacks in the record. ECF No. 17 at 8; Tr. 436. Sometimes a lack of support from medical records is not a germane reason to give little weight to lay witness observations. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017); *see also see also Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Id.*; *see also Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir.

1996).  While it may be true that no provider observed a panic attack, this is not a

sufficient reason for rejecting Plaintiff's mother's testimony.  Panic attacks are

episodic, and it was unreasonable for the ALJ to find that the testimony of Plaintiff's

mother is unreliable because Plaintiff never happened to have a panic attack during

an appointment, especially since the treatment record in this case is somewhat

limited.

Defendant next contends the ALJ properly found Plaintiff's depression was

characterized as being in partial remission.  Tr. 436.  ECF No. 17 at 8.  Defendant

cites records from February 2016, January 2017, and February 2017 from Plaintiff's

treating provider, Jeffrey Van Troba, PAC, which indicate Plaintiff was being

treated for "recurrent major depressive disorder, in partial remission."  Tr. 726-27,

732, 738-39.  Plaintiff argues this is the same ground already conceded by

Defendant as improper, although the wording "is very slightly different."  ECF No.

18 at 4.

The ALJ found, "[h]is treatment record also did not describe him as

particularly depressed.  Rather, his depression was characterized as being in partial

remission."  Tr. 436.  The Court agrees with Plaintiff that the ALJ's statement about

Plaintiff's depression being in partial remission is part of the same finding that the

record did not describe Plaintiff as particularly depressed and is not a distinct reason

for rejecting Plaintiff's mother's testimony.  ECF No. 18 at 4.  Notwithstanding the

records indicating that Plaintiff's depression was in partial remission, Defendant conceded that the ALJ erred in rejecting the testimony because Plaintiff's treatment record did not describe him as particularly depressed.[3]  Because Defendant conceded the issue, the Court concludes this is not a legally sufficient reason for rejecting Plaintiff's mother's testimony.

The reasons given for rejecting the testimony of Plaintiff's mother are not legally sufficient.  Although Plaintiff urges the Court to credit the testimony as true, ECF No. 12 at 12, the Court declines to do so.  *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir.2003) (holding court has flexibility in crediting testimony if substantial questions remain as to credibility and other issues).  On remand, the ALJ shall reconsider the testimony of Plaintiff's mother and provide a legally sufficient explanation for the weight given to it.

---

[3] After conceding that the ALJ improperly found the treatment record did not describe Plaintiff as particularly depressed, Defendant explained the concession was based on Plaintiff's "complaints of depression" in the record.  ECF No. 17 at 7 (citing ECF No. 12 at 11); *see* Tr. 323, 330, 333, 337, 351, 353, 355, 371-72, 392, 723, 731, 740, 747.  It is not clear that "complaints of depression" contradict the "treatment record" mentioned by the ALJ.  Nonetheless, Defendant's concession that the ALJ's finding was incorrect is taken at face value by the Court.

ORDER ~ 21

**D.     Duty to Develop the Record**

Plaintiff contends the ALJ erred by failing to develop the record.  ECF No. 12 at 12.  In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983).  The regulations provide that the ALJ may attempt to obtain additional evidence to resolve and inconsistency in the evidence, when the evidence is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination.  20 C.F.R. §§ 416.917, 416.919a, 416.920b(2).  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  *Smolen*, 80 F.3d at 1288; *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998).

Plaintiff contends the ALJ should have obtained an updated consultative psychiatric examination.  ECF No. 12 at 13.  Plaintiff's last consultative exam was by Dr. Dougherty in 2010, Tr. 336-44, and the last psychological opinion in the record is a reviewing opinion from 2012.  Tr. 82-86.  As Plaintiff notes, few medical records have been added to the record since the ALJ's first decision in 2014, and no opinions regarding Plaintiff's functioning.  Tr. 723-52.  Plaintiff's treating provider

declined to give an opinion regarding disability.[4]  Tr. 732.  Plaintiff's attorney

requested a psychological exam at the second hearing.  Tr. 471.  Defendant contends

Plaintiff should not be allowed to shift his burden to prove that he is disabled to the

ALJ, and that the evidence is neither ambiguous nor inadequate for the ALJ's

decision.  ECF No. 17 at 9-10.

Since this matter is remanded on other grounds, and since it has been more

than eight years since an examining opinion was rendered, the Court finds that on

remand, the ALJ shall obtain a consultative psychological examination.

**E.     Listing 12.05B**

Plaintiff contends he meets the criteria for disability due to intellectual

disability under Listing 12.05B of 20 C.F.R. Part 404, Subpart P, Appendix 1

(2017).[5]  ECF No. 12 at 14-18.  The Listings describe "each of the major body

---

[4] Jeffrey Van Troba, PAC, stated in January 2017, "I do not feel that it is

appropriate at this point to complete disability paperwork."  Tr. 732.

[5] The Listings are frequently revised.  The Court evaluates Plaintiff's impairment

under the version of Listing 12.05B in effect at the time of the ALJ's decision.  *See*

*Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138 n.

1 (2016) ("We expect that Federal courts will review our final decisions using the

rules that were in effect at the time we issued the decisions.").

ORDER ~ 23

systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925. To "meet" a listed impairment, a claimant must establish that he has each characteristic of the listed impairment relevant to his claim. 20 C.F.R. § 416.926. Plaintiff bears the burden of establishing he meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). If Plaintiff meets the listed criteria for disability, he is presumed to be disabled. 20 C.F.R. § 416.920(a)(4)(ii).

At the time of the ALJ's decision, Listing 12.05 was met if Plaintiff's impairments matched three criteria:

1. Significantly subaverage general intellectual functioning evidenced by a or b:
a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
a. Understand, remember, or apply information; or
b. Interact with others; or
c. Concentrate, persist, or maintain pace; or
d. Adapt or manage oneself; and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2017).

The ALJ considered Listing 12.05B and found Plaintiff obtained a full-scale IQ score of 69 during cognitive testing administered in 2009, so the requirement of Listing 12.05B1 is met. Tr. 432 (citing Tr. 308). The ALJ then found that Plaintiff did not meet all the requirements of subsection B because "there is no evidence of deficits in adaptive functioning prior to age 22." Tr. 432. However, "deficits in adaptive functioning prior to age 22" is not a requirement of Listing 12.05B in effect at the time of the ALJ's decision; it was a requirement of a prior version of Listing 12.05. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016). Thus, although the ALJ quoted the correct version of Listing 12.05B in laying out the elements of the Listing, Tr. 431-32, the ALJ erred by applying an out-of-date version of the Listing to the analysis of Plaintiff's actual limitations.

Defendant contends the error is harmless because the ALJ made findings demonstrating that the 12.05B3 criteria is not satisfied, regardless of the erroneous reference to a prior version of the Listing. ECF No. 17 at 12. Subsection 3 of 12.05B requires "evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that

ORDER ~ 25

the disorder began prior to your attainment of age 22." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2017). The ALJ noted Plaintiff was in a long-term relationship, had a young son, performed work at substantial gainful activity level before the protective filing date, and engaged in seasonal work during the relevant period. Tr. 432. Additionally, the ALJ referenced evidence that Plaintiff's failure to finish high school was influenced by factors other than adaptive deficits. Tr. 432. However, the reference to "adaptive deficits" again suggests an error in the application of this subpart of the Listing since that phrase is no longer included in the applicable version of the Listing. The ALJ's analysis of 12.05B3 is therefore insufficient.

Defendant further contends the error is harmless since the ALJ made a finding that the Listing 12.05B2 criteria are not satisfied. ECF No. 17 at 12-13. If the criteria of any one of the subparts is not met, then the Listing is not met. *See* 20 C.F.R. § 416.926; 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05B (2017). Subsection 12.05B2 requires significant deficits in adaptive functioning currently manifested by an extreme limitation in one or marked limitations in two of the following areas of mental functioning: (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; or (d) adapt or manage oneself. The ALJ made findings regarding each of those functional areas. Tr. 429-30.

However, because this matter is remanded on other grounds, because of the ALJ's error in considering 12.05B3, and because the record will be further developed on remand, the Court need not determine whether the 12.05B2 findings are supported by substantial evidence. The ALJ shall reevaluate Listing 12.05B and re-analyze the appropriate version of the Listing on remand.

**F.    Symptom Claims**

Plaintiff contends the ALJ improperly discredited his symptom claims. ECF No. 12 at 18-20. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition.  *Thomas*, 278 F.3d at 958-59.

First, the ALJ found Plaintiff received inconsistent specialized mental health treatment and was non-compliant with medication.  Tr. 433.  Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony.  20 C.F.R. § 416.929(c)(3)(iv)-(v).  The ALJ is permitted to consider

the claimant's lack of treatment in evaluating his symptom claims. *Burch*, 400 F.3d at 681. Similarly, an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may undermine a claimant's subjective complaints. While there are any number of good reasons for not doing so, *see e.g.*, 20 C.F.R. § 416.930(c); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984), a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's symptom claims. *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).

Plaintiff contends the ALJ failed to consider barriers to Plaintiff's treatment. ECF No. 12 at 19. Defendant concedes the ALJ erred in this regard but contends the error was harmless because the ALJ gave other clear and convincing reasons in giving little weight to Plaintiff's symptom claims. ECF No. 17 at 16. The Court agrees the error is harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). However, because this matter is remanded on other grounds, on remand the ALJ should consider and discuss the barriers to treatment found in the record and any supporting or contradictory findings.

Second, the ALJ found Plaintiff had few documented exacerbations of his mental health symptoms. Tr. 433. While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's

pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). The ALJ discussed this finding in detail. Tr. 433-34. Plaintiff contends this reasoning is equivalent to improper reasons given for rejecting Plaintiff's mother's testimony, discussed *supra*. The Court notes that the ALJ cited substantial evidence supporting this finding in addition to the office visit notes indicating Plaintiff's depression was in partial remission. Tr. 433 (citing Tr. 324-25, 353, 435), 726, 732, 738. However, on remand, the ALJ should readdress this issue in light of the error made in assessing the testimony of Plaintiff's mother.

Third, the ALJ found Plaintiff's substance use and reports of substance use were inconsistent. Tr. 434. Conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse finding regarding Plaintiff's subjective complaints. *Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). The ALJ detailed multiple instances of inconsistencies in Plaintiff's reports and behavior regarding alcohol use. Tr. 434-35. Defendant argues the issue is "largely irrelevant" because the ALJ "admits substance use had no effect on the finding of disability." ECF No. 12 at 20. Nonetheless, Plaintiff's inconsistent reports and actions regarding substance use and treatment reasonably undermine his symptom claims and the ALJ properly considered this evidence.

Fourth, the ALJ found Plaintiff's subjective complaints are undermined by Dr. Dougherty's opinion which was given great weight. Tr. 435. A medical opinion finding that a claimant can work undermines a claim of disabling limitations. *See Stubbs-Danielson*, 539 F.3d at 1175. The ALJ concluded that Dr. Dougherty's opinion supports the finding of nondisability and the RFC finding. Tr. 435. The ALJ reviewed Dr. Dougherty's findings and explained how they were credited and incorporated into the RFC. Tr. 435.

Plaintiff contends the ALJ improperly considered Plaintiff's reports about gang activity. ECF No. 12 at 20. The ALJ noted Plaintiff denied gang involvement to Dr. Dougherty but made discussed gang activity in counseling. Tr. 339, 396, 435. The Court agrees with Plaintiff that past gang activity is not relevant to Plaintiff's disability claim. Notwithstanding, the error is minor in view of the ALJ's discussion of Dr. Dougherty's opinion overall. To the extent the ALJ erred, the error is harmless. *See Carmickle*, 533 F.3d at 1162; *Stout*, 454 F.3d at 1055; *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. The ALJ must reconsider the testimony the of Plaintiff's mother and provide

legally sufficient reasons for the weight given to her testimony. The ALJ must also

reevaluate and discuss the subparts of the relevant version of Listing 12.05B.

Additionally, the ALJ should clarify and reconsider other findings in accordance

with this order, including the weight given to the report of Ms. Bishop and the

findings regarding Plaintiff's symptom complaints. On remand, the ALJ shall

obtain a consultative evaluation for an updated psychological opinion. After

developing the record, the ALJ should make new findings, if appropriate.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative

proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. §

405(g).

4. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this

Order and provide copies to counsel. Judgment shall be entered for Plaintiff and

the file shall be **CLOSED**.

**DATED** March 25, 2019.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER ~ 32